**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**TOMMY L. HAMILTON,**

                         **Plaintiff,**

**v.**                                                              **00-CV-300SR**
                                                                    **00-CV-863SR**

**NIAGARA FRONTIER TRANSPORTATION**
**AUTHORITY,**
**CHARLES MARTHA,**
**NORMAN J. BIRNER, and**
**WILLIAM McGEE,**

                         **Defendants.**

---

## DECISION AND ORDER

        In accordance with 28 U.S.C. § 636(c), the parties have consented to have

the undersigned conduct all further proceedings in this consolidated case, including entry

of final judgment.  Dkt. #14 & Dkt. #20.

        This matter is set for trial commencing October 28, 2008.  Currently before

the Court are the parties' motions *in limine* (Dkt. #112 & 114).

Affirmative Defense of Mitigation to FMLA Claim

        Plaintiff argues that mitigation of damages is not a defense to his claim for

back pay under the FMLA.  Dkt. #114-2, p.2.  In support of this argument, plaintiff notes

that although Title VII's enforcement provision specifically requires mitigation,[1] the

FMLA's enforcement provision does not.  Dkt. #114-2, pp.2-5.


The NFTA responds that mitigation is applicable to back pay damages

under the FMLA pursuant to a common law duty to minimize damages.  Dkt. #118, p.2.


The FMLA's enforcement provision provides for damages equal to the

amount of any wages, salary, employment benefits or other compensation denied or lost

to an employee by reason of the violation.  29 U.S.C. § 2617 (a)(1)(A).  Unlike Title VII,

the FMLA's enforcement provision does not explicitly require a plaintiff to mitigate

damages by exercising reasonable diligence to obtain earnings during the pendency of

an action.  However, the duty to mitigate damages exists independently of statute,

pursuant to the following "ancient principle of law" regarding damages:

> Where one person has committed a tort, breach of contract,
> or other legal wrong against another, it is incumbent upon the
> latter to use such means as are reasonable under the
> circumstances to avoid or minimize the damages.  The
> person wronged cannot recover for any item of damage which
> could thus have been avoided.

*Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982), *quoting* C. McCormick, Law of

Damages 127 (1935).  As a result, courts have applied the doctrine of mitigation of

damages across the spectrum of employment discrimination cases.  *See Mattenson v.*

*Baxter Healthcare Corp.,* 438 F.3d 763, 771 (7th Cir. 2006) ("The familiar common law

duty of mitigating damages is imposed" on ADEA claim); *Miller v. AT&T Corp.*, 250 F.3d

---

[1]42 U.S.C. 2000e-5(g)(1) provides that "Interim earnings or amounts earnable with reasonable diligence by the person . . . discriminated against shall operate to reduce the back pay otherwise allowable."

820, 838 (4th Cir. 2001) (imposing mitigation requirement on FMLA claim);  *Parrish v.*

*Immanuel Medical Center*, 92 F.3d 727, 735 (8th Cir. 1996) (*citing Ford Motor Co. v.*

*EEOC* for proposition that plaintiff must mitigate her damages or face a reduction of

damages in ADEA case).

　　　　　Specifically addressing the argument that the FMLA did not require a

plaintiff to mitigate damages, the district court in *Franzen v. Ellis Corporation* stated as

follows:

> the Court does not see the need to mitigate as being
> inherently at odds with the policies underlying the FMLA.  By
> creating a cause of action, the FMLA provides a mechanism
> for ensuring job security for workers with health conditions.
> The fact that this cause of action does not give a person
> discharged license to sit idly by.

No. 03 C 641, 2007 WL 2566237, at *7 (N.D. Ill. Aug. 30, 2007).  The district court

concluded by opining that "the FMLA is not intended to abrogate a plaintiff's duty to

mitigate damages, a duty that is supported by a host of social and economic policies

beyond the need for citation."  *Id.*  In affirming the district court's denial of damages for

failure to mitigate, the Court of Appeals "cautioned that a person discharged – even

illegally – cannot simply refuse to seek other employment and expect his former employer

to pay his salary until he reaches retirement age." __ F.3d __, 2008 WL 4149698, at *8

(7th Cir.  2008).   As a result, that portion of plaintiff's motion *in limine* which seeks to

dismiss the NFTA's defense of mitigation with respect to back pay on the FMLA claim is

denied.

Public Assistance Records

Plaintiff seeks to preclude use of Niagara County Department of Social Services ("DSS"), records as prejudicial and irrelevant.  Dkt. #114-2, pp. 5-8.  Plaintiff also argues that evidence of plaintiff's physician's opinion regarding plaintiff's ability to work should be obtained directly from the physician rather than from DSS.  Dkt. #114-2, p.5.

The NFTA argues that the DSS records are relevant to the issue of plaintiff's employment history and ability to work.  Dkt. #118, p.7.  Specifically, the NFTA asserts that the notes from his physician to Social Services regarding plaintiff's ability to work and to seek employment are relevant to the jury's assessment of plaintiff's ability to work, which impacts his damages.  Dkt. #118, pp.7-8.  The NFTA argues that plaintiff's physician is unlikely to have maintained copies of these records in plaintiff's medical record.  Dkt. #118, p.8.

The remedy in a discriminatory discharge case is intended to compensate a plaintiff only for losses suffered as a result of defendant's discrimination, and does not extend to granting back pay for a period when a plaintiff would have been unable, due to an intervening disability, to continue employment.  *Thornley v. Penton Publishing, Inc.*, 104 F.3d 26, 31 (2d Cir. 1997) (ADEA claim); *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir. 1992), *cert denied,* 510 U.S. 1164 (1994) (Title VII); Schlant v. Victor Belata Belting Co., Inc., No. 94-CV-915, 2000 WL 1737945, at * 1 (W.D.N.Y. Nov. 9, 2000) ("The rule in the Second Circuit is clear – *viz.*, no back pay is available to a plaintiff during a period of disability.").

As plaintiff's ability to work and efforts to seek work (or lack thereof), will impact plaintiff's damages, correspondence from plaintiff's physician to Social Services regarding plaintiff's ability to work is relevant and will not be precluded.  Accordingly, this aspect of plaintiff's motion *in limine* is denied.  However, the Court will not permit the NFTA to introduce evidence of plaintiff's receipt of DSS benefits for purposes other than demonstrating plaintiff's ability and efforts (or lack thereof), to seek work.

Workers' Compensation Records

Plaintiff seeks to preclude introduction into evidence of a decision of the Workers' Compensation Board ("WC Board"), dated September 12, 2007 regarding plaintiff's work capacity and efforts to seek employment.  Dkt. #114-2, p.8.  Plaintiff argues that the standard used by the WC Board with respect to plaintiff's obligation to seek employment is different than the standard for mitigation of damages and would be unduly prejudicial to a jury's determination of damages.   Dkt. #114-2, pp.9-10.

The NFTA argues that the decision is relevant to its defense of mitigation but that the difference in standards utilized by the WC Board and in assessing mitigation will not prejudice the jury because the WC Board's conclusion is based upon plaintiff's admission that he had not looked for work since August of 2002.  Dkt. #118, p.10.  The NFTA also notes that plaintiff is seeking to introduce other documents from the WC Board and should not be permitted to rely upon certain decisions while seeking preclusion of other decisions.  Dkt. #118, p.10.

Plaintiff's motion to preclude the September 12, 2007 determination of the WC Board as evidence in defendant's case in chief is granted.  The WC Board's determination that plaintiff voluntarily withdrew from the labor market is based upon a different evidentiary standard than is relevant to a determination regarding mitigation of damages and the evidence upon which the WC Board relied in making that decision, *to wit*, medical records regarding plaintiff's disability and plaintiff's testimony with respect to his efforts to seek employment, is the best evidence of plaintiff's efforts and ability to mitigate damages resulting from any violation of the FMLA.  The WC Board's determination could usurp the jury's consideration of this underlying evidence and is, therefore, unduly prejudicial.


Lack of PBA Grievance

Plaintiff argues that the NFTA should be precluded from introducing any evidence that the Police Benevolent Association ("PBA"), did not file a grievance regarding plaintiff's termination because neither the NFTA's compliance with the Collective Bargaining Agreement ("CBA"), nor plaintiff's status as a probationary employee is relevant to the issues in this case.  Dkt. #114-2, p.12.


The NFTA argues that the PBA's failure to file a grievance is relevant to establish plaintiff's status as a probationary employee which is relevant to their termination of plaintiff.  Dkt. #118, p.11.

The PBA's failure to file a grievance does not establish and hardly even suggests the fact sought to be proven.  Accordingly, plaintiff's motion to preclude this evidence is granted.

U.S. Department of Labor Investigation

The NFTA seeks to preclude testimony or documentary evidence relating to the U.S. Department of Labor investigation of the NFTA's compliance with the FMLA following plaintiff's complaint to the U.S. Department of Labor ("DOL").  Dkt. #112, ¶ 3. The NFTA argues that the DOL investigation is prejudicial, as it reaches conclusions on the very issues to be determined by the jury.  Dkt. #113, p.4.

The plaintiff responds that the investigation is admissible pursuant to Rule 803(8) of the Federal Rules of Evidence.  Dkt. #117, pp.3-5.

Rule 803(8) of the Federal Rules of Evidence provides that

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (b) matters observed pursuant to a duty imposed by law as to which matters there was a duty to report . . . or (c) in civil actions and proceedings . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness[]

are not excluded by the hearsay rule, even though the declarant is available as a witness. However,

the fact that evidence falls within a hearsay exception does not make it admissible *per se.*  Rather, "[t]he district court

> generally has discretion to exclude such hearsay on other
> grounds, such as where the evidence's probative value is
> substantively outweighed by the danger of unfair prejudice."

*Lovejoy-Wilson v. Noco Motor Fuels, Inc.*, 242 F. Supp.2d 236, 242 (W.D.N.Y. 2003),

*quoting Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 64 (2d Cir. 1998).  In exercising

its discretion, the trial court should consider the quality of the evidence, its potential

impact on the jury, and the likelihood that the trial will deteriorate into a protracted and

unproductive struggle over how the evidence admitted at trial compared to the evidence

considered by the agency.  *Id., citing Paolitto*, 151 F.3d at 65.  Both the *Lovejoy-Wilson*

and the *Paolitto* cases involved investigation and findings made by the Equal

Employment Opportunity Commission regarding charges of discrimination and noted

distinctions between an agency's probable cause determination and a letter of violation,

stating that the latter increases the "potential for prejudicial impact on the jury."  *Id.,*

*quoting Paolitto*, 151 F.3d at 65, n.3; *see also Barfield v. Orange County*, 911 F.2d 644,

649-51 (11th Cir. 1990) (discussing analysis for admission of EEOC reports and

determinations in a jury trial).


   Upon review of the investigation of the DOL into plaintiff's FMLA complaint,

the Court concludes that the observations contained in the DOL investigatory document

are highly probative and that any danger of prejudice arising from the investigator's

findings can be overcome by an instruction by the Court cautioning the jury that the

investigator's findings are not conclusive but are merely some evidence for their

consideration.  Accordingly, this aspect of the NFTA's motion to preclude is denied.

New York State Department of Labor Notice of Violation

The NFTA seeks to preclude introduction into evidence of the New York State Department of Labor's Notice of Violation of regulations regarding the availability of a hepatitis-B shot for plaintiff.  Dkt. #113, p.5.

Plaintiff responds that although the document is a determination of violation, it is still admissible.  Dkt. #117, pp.9-10.

Upon review of the New York State Department of Labor's Notice of Violation the Court is of the opinion that this document is unduly prejudicial when weighed against its probative value.  However, the Court will take judicial notice of and instruct the jury as to the regulations relating to the NFTA's obligation to provide and document its obligation to provide hepatitis-B shot to its employees.

Unemployment Insurance Appeals Board Decision

The NFTA Seeks to exclude the Unemployment Insurance Appeals Board ("Appeals Board"), decision of September 23, 1998 as unfairly prejudicial because of the conclusions it reaches on the very issues to be determined by the jury, *to wit*, the appropriateness of plaintiff's conduct while being treated for his ankle injury.

Plaintiff does not oppose redacting the opinion portion of the Appeals Board decision, but argues that the factual recitation is "highly probative of the NFTA's stated reason for terminating [plaintiff]."  Dkt. #117, p.10.

The Court does not believe that the potential for prejudice is outweighed by the probative value of the Appeals Board decision's factual determination. *See Arroyo v. Westlb Administration, Inc.*, 54 F. Supp.2d 224, 230 (S.D.N.Y. 1999) (decision of the Appeals Board entitled to minimal or nor probative value).  There is simply no reason to present the Appeals Board's determination of facts regarding plaintiff's injury, leave and termination to the jury when the jury can and should be presented with the same or better evidence to reach its own conclusion as to these important issues.  *See, e.g., Kyle v. City of New York,* No. 03 CV 3540, 2006 WL 2375462, at * (E.D.N.Y. Aug. 15, 2006); *Arroyo,* 54 F. Supp.2d at 230; *Abromowitz v. Inta-Boro Acres, Inc.*, No. 98-CV-4139, 1999 WL 1288942, at *6-8 (E.D.N.Y. Nov. 16, 1999).  Moreover, New York's Labor Law specifically limits the preclusive effect of unemployment decisions. *See* N.Y. Labor Law § 623 (2) ("No finding of fact or law contained in a decision rendered . . . by . . . the appeal board . . . shall preclude the litigation of any issue of fact or law in any subsequent action or proceeding.").  Accordingly, this aspect of the NFTA's motion *in limine* is granted.

Punitive Damages

As plaintiff "does not seek punitive damages," the NFTA's motion to preclude evidence or argument regarding punitive damages is moot.  Dkt. #117, p.10.

Emotional Distress Damages

The NFTA seeks to preclude evidence or argument of emotional distress with respect to plaintiff's FMLA claim.  Dkt. #113, p.7.

Plaintiff responds that the question of whether damages for emotional distress are permitted under the FMLA remains undecided in this circuit.  Dkt. #117, p.10. Plaintiff also notes that emotional distress damages are permissible pursuant to Title VII. Dkt. #117, p.10.

Although the Court of Appeals for the Second Circuit does not appear to have addressed this issue, numerous other circuits have considered the issue and determined that recovery for emotional distress is not available under the FMLA because the FMLA specifically lists the types of damages that an employer may be liable for, and it includes damages only insofar as they are the actual monetary losses of the employee such as salary and benefits and certain liquidated damages.  See Farrell v. Tri-County Metro. Transp. Dist. of Oregon, 530 F.3d 1023, 1025 (9th Cir. 2008) (collecting cases from the 5th, 6th, 7th, 8th, 10th and 11th Circuit Courts of Appeals).  Accordingly, the NFTA's motion to preclude evidence or argument regarding plaintiff's emotional distress resulting from any FMLA violation is granted.

Plaintiff's Damages Model

The NFTA seeks to preclude plaintiff from offering any models or demonstrative exhibits illustrating the amount of his alleged damages because the purported model rests upon the DOL's conclusion that plaintiff should have been reinstated on or about June 8, 1998, includes speculative raises and promotions and does not account for plaintiff's failure to mitigate his damages or his purported disability. Dkt. #113, pp.7-9.  Moreover, the NFTA argues that the calculation of back pay is reserved for the trial court, not the jury.  Dkt. #113, p.10.

Plaintiff argues that the model is not speculative because its raises and promotions are based upon nondiscretionary terms within the CBA.  Dkt. #117, pp.11-12. Moreover, plaintiff asserts that his model contains a calculation based solely on the hourly wage plaintiff earned at the time of his termination.  Dkt. #117, p.12.  Finally, plaintiff asserts that because mitigation is an affirmative defense, it need not be included in his model.  Dkt. #117, pp.11.

As an initial matter, the Court notes that the determination of back pay and liquidated damages in an FMLA case is properly submitted to the jury.  *See Frizzell v. Southwest Motor Freight*, 154 F.3d 641, 643 (6th Cir. 1998) (distinction between damages and equitable relief in 29 U.S.C. § 2617 reflects Congress's intent to make juries available to plaintiffs pursuing remedies that fall under § 2617(1)(A), while leaving it to the judge to determine whether equitable relief is warranted under  § 2617(1)(B).

Second, plaintiff's use of June 8, 1998 as a starting date for calculation of back pay is appropriate as that is the day that he was released to work by his physician.

Finally, although the NFTA will argue that plaintiff's calculation of  damages be reduced by the time period in which he failed or was unable to seek work, plaintiff is under no obligation to incorporate such contingencies in his calculation of damages. Accordingly, this aspect of the NFTA's motion *in limine* is denied.

Testimony regarding Plaintiff's Family Circumstances

The NFTA seeks to preclude testimony that plaintiff's prior absences were incurred because of plaintiff's child care obligations or that the NFTA previously denied or otherwise interfered with his right to leave pursuant to the FMLA.  Dkt. #113, p.10.

Plaintiff argues that although his original claim for FMLA violations regarding his absence to care for his child was resolved on summary judgment, his child care obligations remain admissible to address the NFTA's expected questioning regarding his attendance history prior to his ankle injury.  Dkt. #117, pp.12-13.

The Court agrees that there is a distinction between alleging an FMLA violation and explaining prior absences.  Accordingly, plaintiff will not be permitted to raise his prior claim that the NFTA denied his rights pursuant to the FMLA when it failed to permit him leave to provide child care to his son, but he is not precluded from explaining  that he incurred absences because he was providing child care to his son.

Testimony regarding Other Injuries

The NFTA seeks to preclude evidence of other injuries sustained by plaintiff as irrelevant.  Dkt. #113, p.11.

Plaintiff argues that testimony regarding his injury of January 24, 1998 will "provide context concerning his frame of mind and why he attended the April 5, 1998 rail training despite the fact that he was on injury leave."  Dkt. #117, p.13.

The Court reserves judgment on this issue pending a more complete understanding of the context of this potential testimony.

Testimony regarding Pepper Spray

The NFTA seeks to preclude plaintiff from opining that if he had received pepper spray training prior to the March 29, 1998 incident at the South Campus metro station, he would have been able to utilize pepper spray during the incident and would have avoided injury in that incident, on the ground that it is purely speculative and not based upon expert or specialized knowledge.  Dkt. #113, pp.12-13.

Plaintiff responds that as a law enforcement officer with approximately two years of experience, he is qualified to testify as a lay person that he could have and would have used  pepper spray to subdue the unruly suspect on March 29, 1998 if only it had bee provided to him by the NFTA.  Dkt. #117, pp.13-14.

The appropriateness of this line of questioning is best reserved for trial, when the Court has had an opportunity to hear the factual circumstances of the incident.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that plaintiff's motion *in limine* (Dkt. #112), is **GRANTED IN PART AND DENIED IN PART** and defendant's motion *in limine* is **GRANTED IN PART AND DENIED IN PART.**


**SO ORDERED.**


DATED:       Buffalo, New York
             October 24, 2008


                                   **S/ H. Kenneth Schroeder, Jr.**
                                   **H. KENNETH SCHROEDER, JR.**
                                   **United States Magistrate Judge**